IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JANE DOE, on behalf of herself and        )
similarly situated others,                )
                                          )
                 Plaintiffs,              )
                                          )
        v.                                )      Case No. 1:14-cv-00366-BAH
                                          )
UNITED STATES DEPARTMENT OF               )
HEALTH AND HUMAN SERVICES,                )
and SYLVIA M. BURWELL, in her             )
official capacity as Secretary of the     )
United States Department of Health and    )
Human Services,                           )
                                          )
                 Defendants.              )
_____)


**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................3

I.    PLAINTIFF'S FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF
      THE CLERY ACT AMENDMENTS IS NOT PROPERLY PRESENTED AND,
      IN ANY EVENT, SHOULD BE DISMISSSED FOR LACK OF JURISDICTION
      AND FAILURE TO STATE A CLAIM ............................................................................3

II.   THE EXISTENCE OF A CAUSE OF ACTION DIRECTLY AGAINST
      UVA PRECLUDES ALL OF PLAINTIFF'S CLAIMS AGAINST HHS .........................7

III.  PLAINTIFF'S CLAIMS OF POSSIBLE, FUTURE HARM ARE FAR TOO
      SPECULATIVE TO BE JUSTICIABLE ......................................................................10

IV.   HHS CANNOT BE COMPELLED TO RESOLVE CIVIL RIGHTS
      COMPLAINTS WITHIN A PARTICULAR TIMEFRAME...........................................13

V.    HHS'S ALLEGED FAILURE TO PROCESS PLAINTIFF'S OCR
      COMPLAINT IN THE MANNER PLAINTIFF WOULD LIKE DOES NOT
      DEPRIVE HER OF A LIBERTY INTEREST ................................................................17

VI.   NEITHER TITLE IX NOR TITLE IV PROVIDES PLAINTIFF WITH A
      PRIVATE RIGHT OF ACTION AGAINST HHS..........................................................18

VII.  PLAINTIFF'S FREE SPEECH CLAIM FAILS BECAUSE THE CLERY
      ACT DOES NOT REGULATE PLAINTIFF'S SPEECH ...............................................19

CONCLUSION.....................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*A.N.S.W.E.R. Coal. v. Salazar,*
   915 F. Supp. 2d 93 (D.D.C. 2013) ...................................................................4

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967)...................................................................13

*Adams v. Richardson,*
   356 F. Supp. 92 (D.D.C. 1973) ...................................................................18

*Adams v. Richardson,*
   480 F.2d 1159 (D.C. Cir. 1973) ...................................................................18

*Bolden v. City of Topeka,*
   441 F.3d 1129 (10th Cir. 2006) ...................................................................10

*Cabais v. Egger,*
   690 F.2d 234 (D.C. Cir. 1982) ...................................................................13

*Calcano-Martinez v. INS,*
   232 F.3d 328 (2d Cir. 2000)...................................................................10

*\*Cannon v. University of Chicago,*
   441 U.S. 677 (1979)...................................................................7, 9, 18

*Carey v. Wolnitzek,*
   Civil Action No. 3:06-36-KKC, 2006 WL 2916814 (E.D. Ky. Oct. 10, 2006)...................4

*Chavez v. Martinez,*
   538 U.S. 760 (2003)...................................................................17

*Coker v. Sullivan,*
   902 F.2d 84 (D.C. Cir. 1990)]...................................................................8, 14

*Conyers v. Reagan,*
   765 F.2d 1124 (D.C. Cir. 1985) ...................................................................10

*In re Core Commc'ns,*
   531 F.3d 849 (D.C. Cir. 2008) ...................................................................16

*\*Council of and for the Blind v. Regan,*
   709 F.2d 1521 (D.C. Cir. 1983) ...................................................................7, 17, 18

ii

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................6

*Doe v. Va. Dep't of State Police*,
  713 F.3d 745 (4th Cir. 2013) ...................................................................5

*Donahoe v. Arpaio*,
  869 F. Supp. 2d 1020 (D. Ariz. 2012) ...................................................3

*Douglas v. City of Jeannette*,
  319 U.S. 157 (1943) .............................................................................20

*FCC v. League of Women Voters*,
  468 U.S. 364 (1984) .............................................................................20

*\*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ...........................................1, 7, 8, 15

*Gas Pipeline Co. v. FERC*,
  736 F.2d 747 (D.C. Cir. 1984) .............................................................11

*Grynberg v. ENI S.P.A.*,
  503 F. App'x 42 (2d Cir. 2012) ...........................................................3

*Heckler v. Cheney*,
  470 U.S. 821 (1985) .............................................................................16

*Heckler v. Ringer*,
  466 U.S. 602 (1984) .............................................................................16

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
  238 F. Supp. 2d 174 (D.D.C. 2002) .....................................................19

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*,
  No. Civ.A. 04-1724(CKK), 2006 WL 696053 (D.D.C. Mar. 20, 2006) ............................19

*Hygrade Provision Co. v. Sherman*,
  266 U.S. 497 (1925) .............................................................................20

*In re Interbank Funding Corp. Sec. Litig.*,
  629 F.3d 213 (D.C. Cir. 2010) ...............................................................3

*Kansas v. United States*,
  214 F.3d 1196 (10th Cir. 2000) .............................................................6

*Laird v. Tatum,*
    408 U.S. 1 (1972)...................................................................................................20

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001)...............................................................................................20

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................................5

*Marlow v. U.S. Dep't of Educ.,*
    820 F.2d 581 (2d Cir. 1987)....................................................................................17

*Media Access Project v. FCC,*
    883 F.2d 1063 (D.C. Cir. 1989)................................................................................4

*Nat'l Mining Ass'n v. Mine Safety & Health Admin.,*
    599 F.3d 662 (D.C. Cir. 2010)................................................................................16

*National Wrestling Coaches Association v. Department of Education,*
    366 F.3d 930 (D.C. Cir. 2004)..............................................................................8, 9

*Neb. Press Ass'n v. Stuart,*
    427 U.S. 539 (1976)...............................................................................................20

*Oklahoma v. Civil Serv. Comm'n,*
    330 U.S. 127 (1947) .................................................................................................6

*Pub. Citizen Health Research Grp. v. Comm'r,*
    740 F.2d 21 (D.C. Cir. 1984)..................................................................................16

*Scenic America, Inc. v. U.S. Department of Transportation,*
    983 F. Supp. 2d 170 (D.D.C. 2013) .........................................................................9

*Sherman v. Black,*
    315 F. App'x 347 (2d Cir. 2009) ............................................................................16

*South Dakota v. Dole,*
    483 U.S. 203 (1987)..............................................................................................2, 5

*Sprint Spectrum L.P. v. City of Carmel,*
    361 F.3d 998 (7th Cir. 2004) ..................................................................................10

*Susan B. Anthony List v. Driehaus,*
    No. 13-193, 2014 WL 2675871 (June 16, 2014) ...................................................10

*Telecommunications Research and Action Center v. FCC ("TRAC),*
    750 F.2d 70 (D.C. Cir. 1984) ................................................................................. *passim*

*Terrace v. Thompson,*
    263 U.S. 197 (1923) .......................................................................................................20

*United States v. Butler,*
    297 U.S. 1 (1936) ............................................................................................................6

*United States v. Lipscomb,*
    299 F.3d 303 (5th Cir. 2002) .........................................................................................6

*United States v. Morrison,*
    529 U.S. 598 (2000) ........................................................................................................6

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) ....................................................................................................2, 4

*Weaver's Cove Energy, LLC v. Allen,*
    587 F. Supp. 2d 103 (D.D.C. 2008) .............................................................................12

*\*Women's Equity Action League v. Cavazos ("WEAL),*
    906 F.2d 742 (D.C. Cir. 1990) .............................................................................. *passim*

## STATUTES

20 U.S.C. § 1092(f) ..................................................................................................4, 5, 9

Violence Against Women Reauthorization Act of 2013,
    Pub. L. No. 113-4, § 304(a)(1)(B)(iii), 127 Stat. 54 (2013) ............................................6

## RULES AND REGULATIONS

34 C.F.R. § 100.7(c) .......................................................................................................13

45 C.F.R. § 80.7(c) .........................................................................................................13

79 Fed. Reg. 35,418 ....................................................................................................2, 11

## MISCELLANEOUS

*Activists applaud White House effort to fight campus rapes*, Washington Post
    (Jan. 25, 2014) ..............................................................................................................14

*Bush administration taken to task over Title IX record*, Los Angeles Times
    (June 20, 2007) ..............................................................................................................14

Dear Colleague Letter, U.S. Dep't of Educ., April 4, 2011 ............................................................14

Questions and Answers on Title IX and Sexual Violence, U.S. Dep't of Educ.,
     April 29, 2014 .................................................................................................................14

## INTRODUCTION

Plaintiff's opposition to the U.S. Department of Health and Human Service's ("HHS") motion to dismiss demonstrates that plaintiff is indeed seeking to have this Court dictate the timeframe and manner in which HHS resolves plaintiff's pending civil rights complaint ("OCR complaint").  Plaintiff wants an order compelling HHS to complete its investigation by a certain date and instructing HHS to apply Title IX of the Education Amendments of 1972 ("Title IX"), instead of the purportedly less protective standards plaintiff believes the recent amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act Amendments") require.  But, as HHS demonstrated in its opening brief, binding circuit precedent prohibits this Court from interfering with or supervising HHS's efforts to enforce civil rights statutes like Title IX because plaintiff has an adequate remedy at law—a private right of action directly against the University of Virginia ("UVA") for discrimination.  It does not matter that plaintiff purports to challenge the alleged shortcomings (or future, speculated shortcomings) of HHS's investigation as opposed to the lawfulness of UVA's policies or actions.  The D.C. Circuit has rejected this exact argument, concluding that "a direct action against a regulated private party [i]s an adequate remedy at law for whatever additional injury a plaintiff suffered as a result of a federal agency's failure to remedy that violation administratively."  *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009) (citing cases).

Plaintiff's opposition also confirms that the majority of her claims are based on unsupported—indeed, refuted—speculation that, in investigating and resolving plaintiff's OCR complaint, HHS will apply the purportedly less protective standards of the Clery Act Amendments rather than the requirements of Title IX.  The government has repeatedly stated that the Clery Act Amendments do not alter or amend the requirements of Title IX—both

publicly and in this litigation, s*ee* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2,

7-8, ECF No. 7-1, May 20, 2014, and, most recently, in the Notice of Proposed Rulemaking

("NPRM") issued by the Department of Education to implement the Clery Act Amendments, *see*

79 Fed. Reg. 35,418, 35,422 (June 20, 2014) ("[The Clery Act Amendments] did not affect in

any way [Title IX], its implementing regulations, or associated guidance issued by the

Department's Office for Civil Rights.").  Plaintiff's refusal to acknowledge these statements does

not create a certainly impending injury or crystalize her unripe claims.

Finally, plaintiff's attempt to rewrite her complaint to assert a facial challenge to the

constitutionality of the Clery Act Amendments should be rejected.  Such a claim was not

asserted in any of the "Claims For Relief" in her complaint and is not properly asserted against

HHS.  In any event, amendment of plaintiff's complaint to assert this new claim would be futile,

as the claim is not justiciable and lacks merit.  This new facial challenge is based on the same

speculation discussed above, and the Supreme Court has made clear that, in assessing facial

challenges, courts "must be careful not to . . . speculate about hypothetical or imaginary cases."

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) (quotations

omitted).  Moreover, the Clery Act and its recent amendments fit squarely within Congress's

spending power, which permits Congress to further broad policy objectives by conditioning the

receipt of federal funds on compliance with specified conditions.  *See South Dakota v. Dole*, 483

U.S. 203, 206 (1987).

For the reasons set forth in HHS's opening brief and below, this case should be

dismissed.

## ARGUMENT

I.    **PLAINTIFF'S FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF THE CLERY ACT AMENDMENTS IS NOT PROPERLY PRESENTED AND, IN ANY EVENT, SHOULD BE DISMISSSED FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Plaintiff faults HHS for not addressing what plaintiff sees as the "central allegation" in her complaint—that the Clery Act Amendments are unconstitutional on their face. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 1, ECF No. 9, June 17, 2014. But not a single count of plaintiff's complaint alleges that the Clery Act Amendments are facially unconstitutional. Plaintiff, to be sure, sprinkled a few statements regarding the Clery Act Amendment's purported unconstitutionality in the background sections of her complaint, *see* Compl. ¶¶ 19, 32-34, but none of her "Claims For Relief" state such a claim, *see* Compl. ¶¶ 51-91. Rather, the counts of the complaint focus on the statutory and constitutional violations that plaintiff believes will come to pass if, in resolving plaintiff's OCR complaint, HHS applies the Clery Act Amendments in a way that supersedes the requirements of Title IX. *See id.* This Court should not entertain plaintiff's newly-asserted, facial challenge because plaintiff has not complied with the pleading requirements in Federal Rule of Civil Procedure 8. *See Grynberg v. ENI S.P.A.*, 503 F. App'x 42, 44 (2d Cir. 2012) (concluding district court correctly ruled that plaintiff did not make a misappropriation of trade secrets claim where "complaint identified only one claim for relief and it was entitled 'unjust enrichment'"); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1076 (D. Ariz. 2012) ("A complaint having the factual elements of a cause of action present but scattered throughout the complaint and not organized into a short and plain statement of the claim may be dismissed for failure to satisfy Rule 8(a)." (quotation omitted)).

The Court, moreover, should not permit plaintiff to amend her complaint to assert this new claim, as it would be futile. *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213,

218 (D.C. Cir. 2010).  As an initial matter, HHS is not a proper defendant for such a claim

because the Department of Education, not HHS, implements and enforces the Clery Act.  *Cf.*

*Carey v. Wolnitzek*, Civil Action No. 3:06-36-KKC, 2006 WL 2916814, *5 n. 1 (E.D. Ky. Oct.

10, 2006) ("When a plaintiff challenges the constitutionality of a state statute, the proper

defendant is the executive official or agency charged with enforcing the statute[.]"); *see also* 20

U.S.C. § 1092(f).

Moreover, contrary to plaintiff's suggestion, *see* Opp'n at 15, the standing and ripeness

requirements discussed in HHS's opening brief apply with full force to facial challenges.  *See*

*Media Access Project v. FCC*, 883 F.2d 1063, 1070 (D.C. Cir. 1989); *A.N.S.W.E.R. Coal. v.*

*Salazar*, 915 F. Supp. 2d 93, 101 (D.D.C. 2013).  Indeed, the Supreme Court has made clear that,

in addressing facial challenges, courts "must be careful not to go beyond the statute's facial

requirements and speculate about hypothetical or imaginary cases."  *Wash. State Grange*, 552

U.S. at 449-50 (quotations omitted).  Here, plaintiff's alleged injury stems solely from plaintiff's

unsupported—indeed, directly refuted—claim that HHS plans to apply the Clery Act

Amendments to her OCR complaint (and "future complaints involving similarly situated

complainants") in a manner that is inconsistent with, or provides less protection than, Title IX.

Opp'n at 4.  But such speculation does not create a justiciable controversy, particularly where, as

here, the government has repeatedly stated that the Clery Act Amendments do not alter Title IX's

requirements.  *See* Defs.' Mem. at 2, 7-8; *infra* n.5.  Adjudication of plaintiff's facial challenge

under these circumstances would "raise the risk of premature interpretation of [a statute] on the

basis of [a] factually barebones record[]" and "run contrary to the fundamental principle of

judicial restraint that courts should [not] anticipate a question of constitutional law in advance of

the necessity of deciding it."  *Wash. State Grange*, 552 U.S. at 450 (quotations omitted).

Therefore, even if plaintiff were to properly present this claim, the Court would lack jurisdiction to resolve it.[1]

This new claim also would fail on the merits because the Clery Act Amendments are a valid exercise of Congress's spending power and they do not require (or permit) sex discrimination.  The Spending Clause permits Congress "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *Dole*, 483 U.S. at 206 (quotation omitted); *see also* U.S. Const., Art. I, § 8, cl. 1.  The Clery Act, as well as the recent amendments to it—which require educational institutions to disclose information about their security policies and crimes committed on or around their campuses as part of the numerous requirements institutions must satisfy in exchange for the privilege of participating in the Federal student financial aid programs, *see* 20 U.S.C. § 1092(f)—fits squarely within this power.

Plaintiff is wrong in asserting that, when prescribing conditions for federal benefits, Congress's spending power cannot be used to regulate matters, like violence against women, that are purportedly reserved to the states.  There is no such limitation on the spending power.  Indeed, the Supreme Court rejected this very argument in *Dole*, when it upheld a law that conditioned federal highway funds on a state's adoption of a minimum drinking age of 21 "even if Congress may not regulate drinking ages directly."  483 U.S. at 206.  The Court explained that any "perceived Tenth Amendment limitation on congressional regulation of state affairs did not concomitantly limit the range of conditions legitimately placed on federal grants."  *Id*. at 210

---

[1] Plaintiff does not appear to contend that any educational institution she attends has relied on the Clery Act Amendments to violate Title IX's requirements.  Any such alleged injury would raise additional standing problems.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) ("The traceability and redressability prongs [of standing] become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured.").  In any event, plaintiff has an adequate remedy if those circumstances arise—a suit directly against the educational institution under Title IX.  *See infra* Argument II.

(citing *Oklahoma v. Civil Serv. Comm'n*, 330 U.S. 127 (1947)); *see also, e.g.*, *Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir. 2000).  If plaintiff were right about this purported limit on the Spending Clause (and she is not), it would be fatal to her goal of enforcing Title IX's requirements.  The Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress's authority under the Spending Clause."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999) (citing cases).  If the Clery Act were invalid because it regulates violence against women (and it is not), so too would be Title IX, which also regulates violence against women.[2]

Plaintiff also contends that the Clery Act Amendments are unconstitutional because they require funding recipients "to engage in . . . unconstitutional" discrimination.  Opp'n at 1.  But they do not.  The Clery Act Amendments require covered educational institutions to report incidents of domestic violence, dating violence, sexual assault, and stalking that occur on or near their campuses and to disclose information about the institution's policies and procedures relating to these crimes.  *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 304(a)(1)(B)(iii), (a)(8), 127 Stat. 54 (2013).  There is nothing unconstitutional or discriminatory about these reporting requirements.

---

[2] Plaintiff's reliance on *United States v. Butler*, 297 U.S. 1 (1936), and *United States v. Morrison*, 529 U.S. 598 (2000), *see* Opp'n at 1, is misplaced.  To the extent *Butler* suggested that Congress's spending power is cabined by the Tenth Amendment's reservation of rights to the states, "the Court quickly abandoned this view."  *United States v. Lipscomb*, 299 F.3d 303, 319 (5th Cir. 2002); *see* Laurence H. Tribe, American Constitutional Law § 5–b, at 836 (3d ed. 2000) ("[T]he Supreme Court has effectively ignored *Butler* in judging the limits of congressional spending power.")).  Furthermore, *Morrison* addressed Congress's authority under the Commerce Clause, not the Spending Clause, *see* 529 U.S. at 607, and the provision of the Violence Against Women Act that was at issue in *Morrison* was not a funding provision, but rather, a civil remedy provision, *see id.* at 601-02.

## II.      THE EXISTENCE OF A CAUSE OF ACTION DIRECTLY AGAINST UVA PRECLUDES ALL OF PLAINTIFF'S CLAIMS AGAINST HHS

As HHS demonstrated in its opening brief, controlling precedent makes clear that courts cannot interfere with or supervise a federal agency's efforts to enforce civil rights statutes where, as here, the plaintiff has an adequate remedy directly against the allegedly discriminating entity. Plaintiff contends that a suit against UVA is not adequate because she is not challenging the lawfulness of UVA's policies, but rather HHS's purported lack of promptness in resolving her OCR complaint and the standards HHS might apply in doing so.  *See* Opp'n at 8-9. Alternatively, she asserts that the Clery Act Amendments "effectively overturned" the Supreme Court's recognition in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), of a private right of action under Title IX against discriminating educational institutions.  *See* Opp'n at 9-10. Neither of these arguments has any merit.

Both *Women's Equity Action League v. Cavazos* ("*WEAL*"), 906 F.2d 742 (D.C. Cir. 1990), and *Council of and for the Blind v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) involved claims of agency delay in resolving discrimination complaints.  Like plaintiff here, the plaintiffs in *WEAL* stressed that they "sue[d] only to assure that federal agencies . . . promptly process[] complaints and compliance reviews."  906 F.2d at 750.  The plaintiffs in *Council of and for the Blind* similarly alleged that the federal agency had "fail[ed] to adhere to statutory and regulatory time limits for resolving discrimination complaints."  709 F.2d at 1524 (quotation omitted). Nevertheless, in both cases, the court had no trouble concluding that the claims against the federal agencies were barred because the plaintiffs could sue the allegedly discriminating entities directly.  *WEAL*, 906 F.2d at 750; *Council of and for the Blind*, 709 F.2d at 1531.

More recently, in *Garcia*, the D.C. Circuit explicitly rejected the argument plaintiff makes here, *i.e.*, that "a plaintiff may always bring an [Administrative Procedure Act ("APA")]

claim alleging that an agency failed to follow its own regulations in processing or investigating discrimination allegations, notwithstanding the existence of other adequate remedies at law." 563 F.3d at 525. "The suggestion that [the alternate remedy] would not vindicate [the plaintiffs'] interest in ensuring that the [agency] adheres to its duty-to-investigate regulations," the court explained, "was rejected in *Council* [*of and for the Blind*], *Coker* [*v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990)], and *WEAL* when the court concluded that a direct action against a regulated private party was an adequate remedy at law for whatever additional injury a plaintiff suffered as a result of a federal agency's failure to remedy that violation administratively." *Garcia*, 563 F.3d at 525.

The fact that plaintiff purports not to challenge UVA's actions or policies, but rather, the standards HHS may use in resolving her OCR complaint, also does not negate the adequacy of plaintiff's remedy against UVA. Indeed, the D.C. Circuit rejected a similar argument in *National Wrestling Coaches Association v. Department of Education*, 366 F.3d 930 (D.C. Cir. 2004). In that case, the plaintiffs challenged a policy interpretation adopted by the Department of Education that provided guidance as to how the Department would assess compliance with the Title IX regulations on athletics. *Id.* at 934-35. The plaintiffs claimed that "the enforcement policy embodied in [the policy interpretation]" violated the Constitution and exceeded the Department's authority, *id.* at 936, and that "a suit against a university . . . cannot provide an 'adequate remedy' for the alleged unlawfulness of the Department's enforcement policies," *id.* at 947. The court was not persuaded. It observed, among other things, that "challenges to the lawfulness of the Department's policies in fact may be aired in a suit against a university, to the extent that the defendant university attempts to justify its actions by reference to those policies." *Id.* at 947. The same is true here. If UVA relies on the Clery Act Amendments to defend its

actions in any suit plaintiff brings against the university under Title IX, the court can address the contention that the Clery Act Amendments have altered Title IX at that time.[3]

Finally, nothing in the Clery Act Amendments calls into question the Supreme Court's recognition in *Cannon* of a private right of action against discriminating educational institutions under Title IX. As an initial matter, the provision of the Clery Act that plaintiff claims "effectively overturned" *Cannon* is from the original statute enacted in 1990, not the recent amendments. Opp'n at 9 (citing 20 U.S.C. 1092(f)(14)(A)(i)). Therefore, under plaintiff's bizarre theory, every case since 1990 that allowed or relied on the private right of action under Title IX was wrongly decided. But that is not the case. Indeed, in 2004, in response to a similar argument that recent precedent had altered *Cannon*, the D.C. Circuit reaffirmed that "the cause of action recognized in *Cannon* remains viable." *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 946.

Plaintiff, moreover, has not cited anything to suggest that Congress intended to overrule *Cannon* (or the private right of action that *Cannon* recognized Congress to have intended in enacting Title IX) when it enacted the Clery Act or its amendments. Even if Congress intended to deny private parties a right of action to enforce the Clery Act's requirements,[4] it does not follow that Congress meant to eliminate a recognized private right of action to enforce an

---

[3] *Scenic America, Inc. v. U.S. Department of Transportation*, 983 F. Supp. 2d 170 (D.D.C. 2013), on which plaintiff relies, *see* Opp'n at 9, is not persuasive. There, the court determined that a possible remedy in *state court* to challenge a State's decision to permit digital billboards did not qualify as an adequate remedy precluding review under the APA of the agency's final decision that a federal statute authorized states to permit digital billboards. *Scenic America*, 983 F. Supp. 2d at 185. The court explicitly distinguished the possible state court remedy at issue in *Scenic America* from the congressionally-created "independent cause of action" that was available in *WEAL* and other cases involving "federal agencies' failure to enforce antidiscrimination laws against third parties." *Id.*

[4] The Department of Education, which implements the Clery Act, has not taken a position on whether the Clery Act provides a private right of action for individuals to enforce its requirements against colleges. That question is irrelevant here because the applicable cause of action for plaintiff is under Title IX, as it is Title IX's requirements that she is seeking to enforce.

entirely different statute (Title IX).  "Congress does not overrule . . . Supreme Court precedent . .

. subtly," much less silently.  *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006);

*see also Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1004 (7th Cir. 2004) ("Absent . . .

explicit language, . . . we will not . . . presume that Congress intended to modify Supreme Court

precedent . . . ."); *Calcano–Martinez v. INS*, 232 F.3d 328, 338–39 (2d Cir. 2000).

## III.   PLAINTIFF'S CLAIMS OF POSSIBLE, FUTURE HARM ARE FAR TOO SPECULATIVE TO BE JUSTICIABLE

Counts III through VIII seek an advisory opinion, plain and simple.  Plaintiff does not

claim that HHS has investigated her OCR complaint using the purportedly less protective

standards she believes the Clery Act Amendments now require; instead, she fears that the HHS

might do so.  *See, e.g.*, Opp'n at 16 (stating that the Clery Act Amendments "permit[] the

Defendants to discriminate"); *id*. (claiming the Clery Act Amendments "enable[] the

Defendants" to apply a lesser standard).  But plaintiff's fear is based on nothing but speculation.

And worse still, it is speculation that ignores the government's repeated statements that the Clery

Act Amendments do not alter or amend Title IX.  Plaintiff thus asks this Court to address the

effects of a statute—the Clery Act Amendments—that has not injured plaintiff in any way, and

likely never will.  These claims are not justiciable.

Plaintiff's attempt to invoke a lesser justiciability standard, *see* Opp'n at 14-15, does not

help her cause, because no lesser standard applies here.  The "Article III case or controversy

requirement is as applicable to declaratory judgments as it is to other forms of relief."  *Conyers*

*v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985).  Nor is plaintiff aided by "threatened

enforcement" cases.  *See* Opp'n at 16.  Those cases involve *imminent* enforcement *against the*

*plaintiff* of a statute regulating *speech*.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, No. 13-193,

2014 WL 2675871, at *8-11 (U.S. June 16, 2014) (involving statute that criminalized false

statements about candidates; statute had been enforced against the plaintiff previously and the plaintiff intended to engage in the same speech again).  Here, the government has no intention of enforcing against plaintiff the Clery Act Amendments, which govern the conduct of colleges and universities.  Moreover, the government has made clear that the Clery Act Amendments do not alter or amend the requirements of Title IX.  Therefore, there also is nothing imminent about any injury in this case.

Indeed, plaintiff's allegations of imminent injury simply ignore the government's repeated public statements about the effects of the Clery Act Amendments.  Plaintiff claims the HHS "refused to assure [her] that [the Clery Act Amendments'] less protective standard will not be applied to her case."  Opp'n at 14; *see also id*. at 4, 17.  But the government has repeatedly made clear that the Clery Act Amendments do not alter or amend the requirements of Title IX— in public statements, during rulemaking sessions to implement the Clery Act Amendments, and in briefing in this case.[5]  *See* Defs' Mem. at 2, 7-8.  Plaintiff's refusal to acknowledge these statements does not negate them.  She simply cannot escape the fact that this Court has no jurisdiction to adjudicate claims based on speculation that HHS will resolve her OCR complaint using a legal interpretation that the Department of Education (which implements and enforces the Clery Act) has expressly disclaimed.  *See Gas Pipeline Co. v. FERC*, 736 F.2d 747, 751 (D.C. Cir. 1984) ("Were we to entertain anticipatory challenges pressed by parties facing no imminent threat of adverse agency action, . . . we would venture away from the domain of judicial review into a realm more accurately described as judicial preview.").

---

[5] In the preamble to the Notice of Proposed Rulemaking to implement the Clery Act Amendments, which was issued after HHS filed its opening brief, the Department of Education again reiterated that "[the Violence Against Women Reauthorization Act of 2013] amended the Clery Act, but it did not affect in any way [Title IX], its implementing regulations, or associated guidance issued by the Department's Office for Civil Rights (OCR). . . .  Nothing in these proposed regulations alters or changes an institution's obligations or duties under title IX as interpreted by OCR."  79 Fed. Reg. at 35,422.

Plaintiff's claims are similar to those asserted in *Weaver's Cove Energy, LLC v. Allen*, 587 F. Supp. 2d 103 (D.D.C. 2008).  There, the plaintiffs sought a declaration that the Coast Guard's obligations under the Truman–Hobbs Act to conduct an investigation to determine whether a bridge constitutes an unreasonable obstruction to navigation was not superseded by a new law prohibiting the expenditure of federal funds for the demolition of a particular bridge. *Id*. at 105-06.  The Coast Guard agreed that the new law did not absolve it of its duties under the Truman-Hobbs Act.  *Id*. at 111.  The court determined the claim was not ripe.  *Id*. at 112.  The court explained that it has "no authority to grant declaratory relief based on plaintiff's speculation that defendants may, in the future, conduct an investigation too narrow in scope . . . or refuse to carry out their statutory and regulatory duties.  The controversy between the parties regarding the impact of [the new law] on the defendants' statutory obligations is not of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The Court has no authority to decide an issue that has not arisen and may never occur."  *Id*. (quotation omitted). The same is true here.

The constitutional standing and ripeness problems identified above and in HHS's opening brief make it unnecessary for the Court to address prudential ripeness.  Nevertheless, plaintiff's claims are not prudentially ripe either.  Counts III through VIII are not fit for review for the reasons stated above.  As to hardship, HHS explained in its opening brief that plaintiff will suffer no hardship from denial of review because she has an adequate remedy against UVA.  Plaintiff ignores this argument and instead claims that "being forced to attend school alongside her attacker" while HHS investigates her complaint satisfies the hardship prong.  Opp'n at 14.  It does not for several reasons.

First, the cases define hardship as being put to the choice of foregoing lawful activity or risking substantial legal sanctions. *See, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99, 105 (1977) (finding hardship where regulations "require[d] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance").  Plaintiff has not been put to any such choice here.  Second, it appears that plaintiff graduated from UVA before she filed this action.  *See* Opp'n at 18, 20.  Therefore, even if attending school with her alleged attacker was a hardship for ripeness purposes, denying review here would not be the cause of, or perpetuate, that hardship.  Finally, it has always been within plaintiff's power to ameliorate this alleged hardship—by suing UVA to vindicate her rights.  *See Cabais v. Egger*, 690 F.2d 234, 240 (D.C. Cir. 1982) (concluding claims were not ripe where plaintiff had another adequate remedy).

## IV.    HHS CANNOT BE COMPELLED TO RESOLVE CIVIL RIGHTS COMPLAINTS WITHIN A PARTICULAR TIMEFRAME

In its opening brief, HHS explained that Counts I and II, which seek to compel resolution of plaintiff's OCR complaint, should be dismissed because Title IX and its implementing regulations do not impose any legal duty on HHS to resolve OCR complaints in any particular timeframe.  Plaintiff does not dispute that "no fixed deadline applies to the resolution of [her] complaint."  Opp'n at 20.  Instead, she points to language in HHS's regulations, which states that HHS "will make a prompt investigation whenever a compliance review . . . [or] complaint . . . indicates a possible failure to comply with [Title IX]."  45 C.F.R. § 80.7(c); *see* Opp'n at 5, 8, 20.[6]  The regulations, however, do not define "prompt."  *See* 45 C.F.R. pt. 80; Opp'n at 5 ("[T]here is no statutory or regulatory definition of 'prompt' requiring the Defendants to

---

[6] Plaintiff actually cites to the Department of Education's regulations, *see* Opp'n at 5, 8 (citing 34 C.F.R. § 100.7(c)), but identical language appears in HHS's regulations, *see* 45 C.F.R. § 80.7(c).

complete their investigation of [plaintiff's] complaint within a specific time frame[.]").  That is because the length of each investigation depends on the complexity of the issues presented, the extent and severity of the alleged harassment, and the number and complexity of other investigations HHS has pending at the time.  As the D.C. Circuit recognized in *Coker*, 902 F.2d at 89, where the relevant statute and regulations similarly "d[id] not impose any specific schedule or time frame on the [agency]," courts "should not steer [an agency's] resources and shape its priorities when [it] lack[s] knowledge of the matters competing for the [agency's] attention."  *Id.*

Plaintiff also asserts that HHS has a policy and practice of resolving Title IX complaints within 180 days and that educational institutions are required to resolve Title IX complaints within 60 days.  *See* Opp'n at 6 n.10, 20.  But the authority plaintiff cites does not support these assertions.  The articles discuss the Department of Education's investigation of OCR complaints, not HHS's.[7]  Furthermore, far from imposing an absolute deadline on educational institutions, the Department of Education's April 4, 2011 Dear Colleague Letter states that "a typical investigation [by a college] takes approximately 60 calendar days," but whether the Department considers a college's complaint resolutions to be timely will depend "on the complexity of the investigation and the severity and extent of the harassment."  *See* Dear Colleague Letter at 12, U.S. Dep't of Educ., April 4, 2011, *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf; *see also* Questions and Answers on Title IX and Sexual Violence, at 32, U.S. Dep't of Educ., April 29, 2014, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ("OCR does not require

---

[7] *See* Opp'n at 6 n.10 (citing *Bush administration taken to task over Title IX record*, Los Angeles Times (June 20, 2007), *available at* http://articles.latimes.com/2007/jun/20/sports/sp-titleix20; *Activists applaud White House effort to fight campus rapes*, Washington Post (Jan. 25, 2014), *available at* http://www.washingtonpost.com/blogs/she-the-people/wp/2014/01/25/activists-applaud-white-house-effort-to-fight-campus-rapes/).

a school to complete investigations within 60 days; rather OCR evaluates on a case-by-case basis

whether the resolution of sexual violence complaints is prompt and equitable.  Whether OCR

considers an investigation to be prompt as required by Title IX will vary depending on the

complexity of the investigation and the severity and extent of the alleged conduct.").  In short,

plaintiff has not shown that the timeframe within which HHS resolves OCR complaints is

anything other than discretionary, and thus, this Court cannot impose time limits on HHS under

the Mandamus Act or the APA.[8]

Plaintiff's reliance on *Telecommunications Research and Action Center v. FCC*

("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984), *see* Opp'n at 19-22, is misplaced.  The factors

discussed in that case for assessing claims of agency delay do not apply where, as here, the

plaintiff has an adequate remedy at law or the court lacks jurisdiction to review the final agency

decision the plaintiff is seeking to compel.

First, *TRAC* is inapplicable if the plaintiff has an adequate remedy.  In *Garcia*, the

plaintiffs sought to compel the agency to investigate administrative complaints that alleged

discrimination in the agency's administration of its farm benefit programs.  563 F.3d 519.

Because the plaintiffs had an adequate remedy for their claims under the Equal Credit

Opportunity Act, the court refused to consider whether relief would be available under *TRAC* in

the absence of this adequate remedy.  *Id*. at 522 n.3.  The same reasoning applies here.  *TRAC* is

not implicated because plaintiff has an adequate remedy against UVA.  *See supra* Argument II.

---

[8] Plaintiff also appears to be seeking relief "on behalf of women as a class" with respect to a complaint
that was filed against Harvard Law School in 2010.  *See* Opp'n at 6-7, 22.  This reference appears to be to
a complaint filed with the Department of Education, not HHS.  Therefore, any claims for relief with
respect to the Harvard complaint are not properly asserted against HHS.  In any event, plaintiff does not
have standing to assert any claims with respect to the Harvard complaint, as she has not alleged that she
submitted the complaint or that she attended or attends Harvard Law School.  Plaintiff states that she "is a
member of the class intended to benefit from that investigation," Opp'n 7, but it is not clear whether this
statement refers to her status as a woman or something else.  Furthermore, any claims as to the Harvard
complaint fail for the same reasons that plaintiff's other claims fail.

Second, a court can compel agency action under *TRAC* only if it would have jurisdiction to review the final agency decision being compelled.  In *TRAC*, the court explained that its jurisdiction to compel agency action stemmed from its need to protect its jurisdiction to review the agency's final decision.  "[T]here is no doubt," the court noted, that it "has present jurisdiction to hear claims concerning nonfinal agency action (or inaction) that might affect [its] future statutory review of final agency action."  *TRAC*, 750 F.2d at 79; *see Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 599 F.3d 662, 673 (D.C. Cir. 2010) (declining to compel agency to complete study where the plaintiff "point[ed] to no statute that would authorize [the] court to review [the agency's] study upon its completion," and explaining that "[t]his court's interest in protecting its future jurisdiction does not arise if the final agency action is not reviewable in this court" (quotation omitted)); *TRAC*, 750 F.2d at 76 ("Because the statutory obligation of a [court] to review on the merits may be defeated by an agency that fails to resolve disputes, a [court] may resolve claims of unreasonable delay in order to protect its future jurisdiction."); *id*. at 77 (observing that the APA "indicate[s] a congressional view . . . that *court's designated by statute to review agency actions* may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed" (emphasis added)).  Indeed, plaintiff has not cited (and the government is not aware of) any case in which the D.C. Circuit applied *TRAC* to compel agency action (or to decline to compel agency action) where the court would not have had jurisdiction to review the final agency decision the plaintiff sought to compel.  *See, e.g.*, *In re Core Commc'ns*, 531 F.3d 849, 850-52 (D.C. Cir. 2008); *Pub. Citizen Health Research Grp. v. Comm'r*, 740 F.2d 21, 27 (D.C. Cir. 1984).  Here, HHS's final resolution of plaintiff's OCR complaint is not subject to judicial review,[9] and thus, *TRAC* does not permit the court to compel HHS to complete its investigation in any particular time-frame.[10]

---

[9] *See Heckler v. Cheney*, 470 U.S. 821, 832 (1985); *Heckler v. Ringer*, 466 U.S. 602 (1984); *Sherman v.*

V.     HHS'S ALLEGED FAILURE TO PROCESS PLAINTIFF'S OCR COMPLAINT
       IN THE MANNER PLAINTIFF WOULD LIKE DOES NOT DEPRIVE HER OF A
       LIBERTY INTEREST

        In its opening brief, HHS demonstrated that plaintiff's due process claims (Counts IV and

V) should be dismissed because plaintiff has not alleged that she was deprived of any liberty or

property interest protected by the U.S. Constitution.  HHS pointed to *WEAL*, where the D.C.

Circuit dismissed a nearly identical due process claim that was based on the Department of

Education's purported shortcomings in responding to Title IX OCR complaints and enforcing

compliance with Title IX.  906 F.2d at 752.  *WEAL* explains that an "agency's failure to process

discrimination complaints in the manner required by [Title IX] does not deprive the

complainants of constitutional rights" because it "does not *extinguish* their [statutory] rights . . . ,

it merely denies them the assistance of the [agency] in vindicating those rights."  *WEAL*, 906

F.2d at 752 (quoting *Council of and for the Blind*, 709 F.2d at 1533).

        Plaintiff makes no effort to distinguish *WEAL* in her opposition.  She goes to great

lengths to try to distinguish *Council of and for the Blind*, *see* Opp'n at 23-24, but the factual

differences she points to do not undermine the controlling nature of that case's holding.  Indeed,

in *WEAL*, when presented with facts that are nearly identical to those at issue here, the D.C.

Circuit concluded that *Council of and for the Blind* controls.  *See WEAL*, 906 F.2d at 752.

        Plaintiff maintains that she has asserted a "specific and cognizable deprivation of

liberty," Opp'n at 23, but she never clearly defines what it is.  *See Chavez v. Martinez*, 538 U.S.

760, 775 (2003) (observing that the plaintiff must provide "a 'careful description' of the asserted

---

*Black*, 315 F. App'x 347, 348-49 (2d Cir. 2009); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 582-83
(2d Cir. 1987); *see also supra* Argument II.

[10] Because HHS does not believe the *TRAC* factors apply in this case, those factors are not discussed here.
If the Court nevertheless determines that *TRAC* applies and Counts I and II are not otherwise subject to
dismissal, HHS likely would move for summary judgment on these claims and address the *TRAC* factors
at that time.

fundamental liberty interest" when raising a due process claim). She appears to contend that HHS's purported delay in investigating her OCR complaint and the possibility that HHS might evaluate the complaint under the purportedly less protective standards of the Clery Act Amendments, instead of Title IX, will deprive her of liberty. Aside from being speculative, *see supra* Argument III, plaintiff cites no authority to demonstrate that this is in fact a liberty interest. HHS has not deprived plaintiff of any right to be free from sex discrimination. At most, she alleges that HHS has denied her "administrative assistance in the vindication of underlying . . . statutory and constitutional interests" in being free from sex discrimination. *Council of and for the Blind*, 709 F.2d at 1534 (quotation omitted). Such allegations, the D.C. Circuit has made clear, do not state a due process claim. *See WEAL*, 906 F.2d at 752; *Council of and for the Blind*, 709 F.2d at 1534.[11]

## VI.  NEITHER TITLE IX NOR TITLE IV PROVIDES PLAINTIFF WITH A PRIVATE RIGHT OF ACTION AGAINST HHS

HHS demonstrated in its opening brief that Counts VII and VIII, which are brought pursuant to Title IX and Title IV, respectively, should be dismissed because these statutes do not create a private right of action against the government with respect to its enforcement activities. *See* Defs.' Mem. at 21-24. Plaintiff's response to this argument is befuddling. She asserts that the APA provides a waiver of sovereign immunity for Counts VII and VIII (which is wrong for reasons already explained, *see* Defs.' Mem. at 12-14; *supra* Argument II) and that she can assert

---

[11] Plaintiff's reliance on *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973), *see* Opp'n at 25, is unconvincing. As an initial matter, that case involved an APA claim, not a due process claim. Moreover, the court's authority to decide *Adams* has been questioned by the D.C. Circuit after *Cannon* because of the adequate remedy directly against discriminating entities that *Cannon* recognized. *See WEAL*, 906 F.2d at 746 (noting that *Adams* "did not treat the question whether an APA action might be precluded by reason of the availability of another adequate remedy"). Finally, even if *Adams* is still good law, it involved circumstances where the agency made express findings that schools had engaged in unlawful discrimination and yet the agency took no action. *See* 480 F.2d at 1164; *see also Adams v. Richardson*, 356 F. Supp. 92 (D.D.C. 1973). That is not the case here.

claims against the federal government under the Fifth Amendment's Equal Protection and Due

Process Clauses.  *See* Opp'n at 26-27.  Of course, neither of these arguments addresses HHS's

point: Title IX and Title IV—the statutes under which plaintiff purports to bring Counts VII and

VIII—do not provide a private right of action against HHS.  Because plaintiff wholly failed to

address this argument, these claims should be dismissed.  *See Hornbeck Offshore Transp., LLC*

*v. U.S. Coast Guard*, No. Civ.A. 04-1724(CKK), 2006 WL 696053, *23 (D.D.C. Mar. 20, 2006)

(construing a plaintiff's failure to respond to the agency's arguments as "a concession that the

[a]gency's arguments on th[e] issue are meritorious"); *Hopkins v. Women's Div., Gen. Bd. of*

*Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit

that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments

raised by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded.").[12]

## VII.  PLAINTIFF'S FREE SPEECH CLAIM FAILS BECAUSE THE CLERY ACT DOES NOT REGULATE PLAINTIFF'S SPEECH

In its opening brief, HHS showed that plaintiff's free speech claim should be dismissed

because the Clery Act Amendments do not regulate plaintiff's speech (or the speech of other

students) in any way.  Plaintiff's opposition confirms just how unprecedented her free speech

claim is.

Plaintiff concedes that the Clery Act Amendments do not regulate, restrict, or limit her

speech.  Instead, her claim is that the government's regulation of third parties—*i.e.*, educational

institutions via the Clery Act Amendments—has a chilling effect on plaintiff's speech.  *See*

Opp'n at 27.  Plaintiff, however, cites no authority for her extraordinary view that the Free

---

[12] To the extent plaintiff means to say that, despite what her complaint says, her Title IX and Title IV claims are not really Title IX and Title IV claims at all but rather additional equal protection and due process claims, those claims fail for the same reasons that her other equal protection and due process claims fail.  *See supra* Arguments III and V.

Speech Clause's protections extend this far (and the government is not aware of any).  To be sure, in *Laird v. Tatum*, 408 U.S. 1, 11 (1972), the Supreme Court observed that free speech violations may arise from the chilling effect of laws that do not directly prohibit speech.  But, in the same paragraph, the Court made clear that these "chilling" cases involve plaintiffs who were "either presently or prospectively *subject to* the regulations, proscriptions, or compulsions that [they were] challenging."  *Id*. (emphasis added).  Indeed, all of the cases plaintiff points to involved laws that regulated the speech *of the plaintiffs*, whether directly or indirectly.  *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 538 (2001) (lawyers challenged law that prohibited them from seeking to challenge existing welfare laws); *FCC v. League of Women Voters*, 468 U.S. 364, 366 (1984) (owners and operators of broadcasting stations challenged law that prohibited them from engaging in editorializing); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 541 (1976) (journalists challenged court order that prohibited them from publishing certain admissions of the accused during a criminal trial); *Douglas v. City of Jeannette*, 319 U.S. 157, 159-60 (1943) (Jehovah's Witnesses challenged law that criminalized solicitation without a license); *Hygrade Provision Co. v. Sherman*, 266 U.S. 497, 499-500 (1925) (kosher business owners challenged law that criminalized improper labelling of kosher foods).[13]  The Clery Act and its amendments, in contrast, do not regulate plaintiff's speech; they regulate educational institutions by requiring them to disclose information about crimes committed on or around their campuses and related security policies.  Because the law plaintiff challenges does not regulate her speech, her free speech claim fails.[14]

---

[13] *Terrace v. Thompson*, 263 U.S. 197 (1923), *see* Opp'n at 28, did not involve a free speech claim.

[14] HHS also explained in its opening brief that plaintiff's right-to-petition claim fails because that right does not guarantee a government response to plaintiff's OCR complaint.  *See* Defs.' Mem. at 24. Plaintiff's opposition does not address her right-to-petition claim, and thus, it is waived.  *See supra* p. 19 (citing cases).

## CONCLUSION

For the reasons set forth above and in HHS's opening brief, the Court should dismiss this case.

Respectfully submitted this 11th day of July, 2014,

> STUART F. DELERY
> Assistant Attorney General
>
> RONALD C. MACHEN, JR.
> United States Attorney
>
> SHEILA M. LIEBER
> Deputy Director
>
>  s/ Michelle R. Bennett
> MICHELLE R. BENNETT (CO Bar No. 37050)
> Trial Attorney
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue N.W. Room 7310
> Washington, D.C. 20530
> Tel: (202) 305-8902
> Fax: (202) 616-8470
> Email: michelle.bennett@usdoj.gov
>
> *Attorneys for Defendants*