## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *on behalf of herself and similarly situated others*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 14-366 (BAH) <br> Judge Beryl A. Howell |
| JANE DOE, *on behalf of herself and similarly situated others*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. | Civil Action No. 14-367 (BAH) <br> Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

The plaintiff in these two related cases, Jane Doe[1], seeks mandamus and declaratory

relief against the defendants, the U.S. Department of Health and Human Services ("HHS") and

the U.S. Department of Education ("DOE"), for alleged violations of Title IX of the Education

Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, Title IV of the Civil Rights Act of

1964 ("Title IV"), 42 U.S.C. § 2000c *et seq.*, the Patient Protection and Affordable Care Act

---

[1] The petitioner was granted leave to proceed under a pseudonym due to the nature of the allegations in the petitions. Order Granting Mot. Lv. Proceed Under Pseudonym at 4, Case No. 14-366, ECF 2; Order Granting Mot. Lv. Proceed Under Pseudonym at 4, Case No. 14-367, ECF 2.

("ACA"), 42 U.S.C. § 18001, *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and the U.S. Constitution. *See generally* Pet. Mandamus ("366 Pet."), Case No. 14-366, ECF No. 3; Pet. Mandamus ("367 Pet."), Case No. 14-367, ECF No. 3. The plaintiff, a former undergraduate student at the University of Virginia ("UVA"), alleges that UVA "failed to provide prompt and equitable redress in connection with its investigation and resolution of a matter arising out of severe sexual harassment and misconduct perpetrated against [the plaintiff] in December 2011." 366 Pet. ¶ 2; 367 Pet. ¶ 2. The plaintiff subsequently filed complaints with the defendants alleging that UVA's response to her case violated Title IX and Title IV. 366 Pet. ¶¶ 2–3; 367 Pet. ¶¶ 2–3.

The alleged sexual harassment and misconduct underlying the two complaints at issue are serious issues that are the subject of ongoing debate on college campuses, including UVA, and elsewhere. The plaintiff invites judicial involvement, but the United States' system of jurisprudence requires that courts resolve only those "Cases" or "Controversies" brought against the right defendants on valid and legally cognizable claims, so that justice can be done for all parties to the lawsuit.

The plaintiff's suit is, for the most part, based on an erroneous interpretation of recent amendments to seven of the eighteen subsections of 20 U.S.C. § 1092(f), known as the "Clery Act." *See generally* 366 Pet.; 367 Pet. The plaintiff contends that these amendments also changed the standard under which sexual assault and harassment claims are evaluated by colleges and universities under Title IX, which is a separate and distinct statute from the Clery Act. *See* 366 Pet. ¶ 15; 367 Pet. ¶ 15. The Clery Act establishes certain reporting and notification requirements for higher learning institutions. 20 U.S.C. § 1092(f). By contrast, Title IX prohibits discrimination based on sex at those educational institutions, 20 U.S.C. § 1681, and

provides mechanisms for Federal agencies to enforce those provisions through the withholding

of grants or other federal funding, *id.* § 1682.  The 2013 amendments to portions of the Clery

Act, contained in Section 304 of the Violence Against Women Reauthorization Act of 2013

("VAWA"), Pub. L. 113-4, 127 Stat. 54, 89–92 (2013), had no effect on Title IX.

The defendants have moved to dismiss the plaintiff's complaints on grounds that this

Court lacks jurisdiction over the matters and that the complaints fail to state a claim upon which

relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6),

respectively.  Defs.' Mot. Dismiss ("HHS Mot.") at 1, Case No. 14-366, ECF No. 7; Defs.' Mot.

Dismiss ("DOE Mot.") at 1, Case No. 14-37, ECF No. 7.  For the reasons explained in more

detail below, the defendants' motions are granted.

## I.      BACKGROUND

To understand the plaintiff's claims, and why they are based on an erroneous

interpretation of the law, the Court first reviews the Clery Act and the recent amendments made

under VAWA's Section 304, before turning to the plaintiff's specific allegations.

### A.      The Clery Act Amendments In VAWA

The Clery Act requires institutions of higher learning that receive federal funding—

which encompasses nearly every public and private university in the United States—to disclose

crime statistics and campus security policies.  20 U.S.C. § 1092(f)(1).  The Act has eighteen

subsections that delineate the information an institution must disclose both publicly and to the

Department of Education, which is the agency responsible for enforcing the Clery Act.  *See id.*

Among other things, the Clery Act requires that institutions disclose: "policies concerning

campus law enforcement," *id.* § 1092(f)(1)(C); "polic[ies] regarding the possession, use, and sale

of alcoholic beverages," *id.* § 1092(f)(1)(H); crimes believed to be "a threat to other students . . .

that are reported to campus security," *id.* § 1092(f)(3); and certain aspects of the institutions'

"police or security department . . . daily log[s]," *id.* § 1092(f)(4)(A).  The Clery Act also contains requirements for reporting information to the Federal government, *id.* § 1092(f)(5); *id.* § 1092(f)(12); definitions for terms used in the Act, including certain crimes, *id.* § 1092(f)(6); directions for compiling reportable statistics, *id.* § 1092(f)(7); and an enforcement provision, *id.* § 1092(f)(13).

Section 304 of the VAWA amended seven subsections of the Clery Act.  127 Stat. at 89–92.  Although most of the amendments modified definitions, Section 304 replaced three subsections entirely: 20 U.S.C. § 1092(f)(8), § 1092(f)(16), and § 1092(f)(17).  The new § 1092(f)(8) requires institutions to include in their public reports "a statement of policy regarding" the "institution's programs to prevent domestic violence, dating violence, sexual assault, and stalking" and "the procedures that such institution will follow once an incident . . . has been reported, including a statement of the standard of evidence that will be used during any institutional conduct proceeding arising from such a report."  127 Stat. 90 (codified at 20 U.S.C. § 1092(f)(8)(A)).

Due to the amendment made by VAWA's Section 304, the new § 1092(f)(8) requires the institution's statement of policy to address "education programs to promote the awareness" of sexual and domestic violence; the "possible sanctions or protective measures that such institution may impose following a final determination of an institutional disciplinary procedure;" "procedures victims should follow" if an offense occurs; "procedures for institutional disciplinary action;" procedures the institution will take to maintain confidentiality; notification about services available for those affected by sexual and domestic violence; and the options victims may exercise "regardless of whether the victim chooses to report the crime to campus police or local law enforcement."  *Id.* at 90–91 (codified at 20 U.S.C. § 1092(f)(8)(B)).  Section

304 further added a requirement to the new § 1092(f)(8) that the institution's policy "include a clear statement that . . . disciplinary action in cases of alleged domestic violence, dating violence, sexual assault, or stalking" involve proceedings that provide "prompt, fair, and impartial investigation and resolution" to the parties involved, as well as "be conducted by officials who receive annual training on the issues related to domestic violence, dating violence, sexual assault, and stalking and how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability." *Id.* at 91 (codified at 20 U.S.C. § 1092(f)(8)(B)(iv)).

As noted, Section 304 of VAWA also replaced § 1092(f)(16) of the Clery Act to require the Secretary of Education to "seek the advice and counsel of the Attorney General of the United States and the Secretary of Health and Human Services concerning the development, and dissemination to institutions of higher education, of best practices information about preventing and responding to incidents of domestic violence, dating violence, sexual assault, and stalking, including elements of institutional policies that have proven successful based on evidence-based outcome measurements." *Id.* at 92 (codified at 20 U.S.C. § 1092(f)(16)). Finally, Section 304 of VAWA replaced § 1092(f)(17), which states that "no officer, employee, or agent of an institution . . . shall retaliate, intimidate, threaten, coerce, or otherwise discriminate against any individual for exercising their rights or responsibilities under any provision" of the Clery Act. *Id.* (codified at 20 U.S.C. § 1092(f)(17)).

Importantly for the resolution of the instant suit, section 304 did not amend eleven of the Clery Act's subsections, including 20 U.S.C. § 1092(f)(2), which subsection states that "[n]othing in this subsection shall be construed to authorize the Secretary to require particular policies, procedures, or practices by institutions of higher education with respect to campus crimes or campus security." *See generally id.* at 89–92. After Section 304 took effect in March

2014, DOE issued a statement that the changes to the Clery Act in the VAWA "did not affect in any way title IX of the Education Amendments of 1972 . . . its implementing regulations, or associated guidance issued by the Department's Office for Civil Rights."  Violence Against Women Act, 79 Fed. Reg. 35,418, 35,422 (June 20, 2014).  Indeed, DOE stated that "[w]hile the Clery Act and title IX overlap in some areas relating to requirements for an institution's response to reported incidents of sexual violence, the two statutes and their implementing regulations and interpretations are separate and distinct."  *Id.*[2]

With this contextual background, the plaintiff's specific allegations are examined next.

**B.      The Petitioner's Claims**

As previously noted, the plaintiff is a former undergraduate student at UVA and a current resident of the District of Columbia. 366 Pet. ¶ 48; 367 Pet. ¶ 48.  In December 2011, the plaintiff reported to UVA an alleged incident of sexual harassment and assault perpetrated against the plaintiff.  366 Pet. ¶¶ 2, 6; 367 Pet. ¶¶ 2, 6.  After the university investigated the plaintiff's allegations, "UVA determined the underlying sexual harassment/misconduct matter in favor of the offender."  366 Pet. ¶ 6; 367 Pet. ¶ 6.

Following UVA's dismissal of the plaintiff's complaint in June 2012, the plaintiff filed a complaint with DOE's Office for Civil Rights pursuant to Title IX and Title IV.  367 Pet. ¶ 2. The plaintiff filed a similar complaint with HHS' Office for Civil Rights.  366 Pet. ¶ 2.  Both complaints allege that UVA violated Title IX and Title IV by "fail[ing] to provide prompt and equitable redress in connection with its investigation and resolution of a matter arising out of

---

[2] The Court may take judicial notice of items published in the Federal Register.  44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed").  In any event, since the defendants are challenging the Court's subject matter jurisdiction over this matter, the Court may examine facts outside of the Complaint as part of "an independent investigation to assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)).

severe sexual harassment and misconduct perpetrated against [the plaintiff] in December 2011."
366 Pet. ¶ 2; 367 Pet. ¶ 2.  The plaintiff alleged, *inter alia*, that UVA "failed to promptly and
equitably investigate and resolve" the matter, "destroyed and/or withheld evidence" of the
alleged assault, failed to gather evidence showing that the plaintiff was "substantially
incapacitated by rape drugs" at the time of the incident, and "unlawfully applied a burden of
proof far stricter than the mandatory preponderance of the evidence standard."  366 Pet. ¶ 5; 367
Pet. ¶ 5.

On July 19, 2012, HHS confirmed receipt of the plaintiff's complaint and informed the
plaintiff that she would be contacted after an initial review.  366 Pet. App'x Doc. 2 at 41, ECF
No. 3.[3]  In December 2012, HHS contacted the plaintiff requesting additional information.  366
Pet. App'x Doc. 3 at 43, ECF No. 3.  Specifically, HHS requested that the plaintiff: (1) "restate
[her] allegation(s)"; (2) notify HHS as to the status of her complaint pending before DOE; (3)
identify who the plaintiff's allegations were against; (4) provide the "names and contact
information of any witnesses"; and (5) provide "any evidence that substantiates [her]
allegations."  *Id.* at 43–44.  The petition and attachments do not indicate whether the plaintiff
responded to this letter.  The plaintiff alleges that HHS has taken no further action on her
complaint.  366 Pet. ¶ 1.

On July 27, 2012, DOE dismissed the plaintiff's complaint but consolidated the
plaintiff's allegations into an ongoing compliance review of UVA "to assess whether the
University's policies and procedures, and the University's implementation thereof, ensure the
elimination of sexual harassment and sexual violence."  367 Pet. App'x Doc. 2 at 63, ECF No. 3.

[3] Citations to pages in the complaints' appendices refer to the ECF document number.

More than a year later, on March 6, 2014, the plaintiff filed the instant petitions for mandamus and equitable relief in this Court.  *See generally* 366 Pet.; 367 Pet.  Each petition seeks relief based on eight causes of action.  366 Pet. ¶¶ 51–91; 367 Pet. ¶¶ 51–93.  The Counts are as follows: Count I, labeled "Mandamus," is predicated on the defendants' alleged failure to resolve her complaints "promptly," 366 Pet. ¶¶ 51–61; 367 Pet. ¶¶ 51–63; Count II labeled "Administrative Procedures [sic] Act" alleges that the agencies' failure to act "constitutes 'unreasonabl[e] delay' within the meaning of 5 U.S.C. § 706(2)," 366 Pet. ¶ 63 (alteration in original); 367 Pet. ¶ 65 (alteration in original); Count III, labeled "Equal Protection," claims that the agencies' violated the plaintiff's rights to equal protection under the "Fourteenth Amendments [sic] to the United States Constitution," 366 Pet. ¶¶ 66–68; 367 Pet. ¶¶ 68–70; Count IV, labeled "Substantive Due Process," alleges that the agencies violated the plaintiff's right to "substantive Due Process of law" under the Fourteenth Amendment, 366 Pet. ¶¶ 70–72; 367 Pet. ¶¶ 72–74; Count V, labeled "Procedural Due Process," alleges the agencies violated the plaintiff's right to "procedural due process" under the Fourteenth Amendment, 366 Pet. ¶¶ 74–77; 367 Pet. ¶¶ 76–79; Count VI, labeled "First Amendment," alleges that the agencies' delay "chilled" the plaintiff's First Amendment rights, 366 Pet. ¶¶ 79–81; 367 Pet. ¶¶ 81–83; Count VII, labeled "Title IX," alleges that the agencies' "delayed redress of [the plaintiff's] complaint threatens and violates Petitioner's rights and the rights of similarly situated others" under Title IX, 366 Pet. ¶¶ 83–86; 367 Pet. ¶¶ 85–88; and Count VIII, labeled "Title IV," alleges that the agencies' "delayed redress of [the plaintiff's] complaint threatens and violates [the plaintiff's] rights and the rights of others by subjecting violence on the basis of sex to less protective legal standards in violation of Title IV," 366 Pet. ¶¶ 88–91; 367 Pet. ¶¶ 90–93.

The plaintiff seeks three types of relief: (1) issuance of a writ of mandamus "ordering [the agencies] to investigate and resolve her Complaint and issue a decision thereon before March 7, 2014;" (2) an order that the agencies "shall not apply substantive provisions from [Section 304] to the resolution of [the plaintiff's] complaint . . . if [the plaintiff's] complaint is not resolved until after March 7, 2014;" and (3) a declaration that "identified aspects of [Section 304 are] unconstitutional" and an injunction against "their future enforcement on behalf of [the plaintiff] and similarly situated others." 366 Pet. at 29; 367 Pet. at 29.

The defendants have moved to dismiss the actions for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. HHS Mot. at 1; DOE Mot. at 1.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the

complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)) (internal citations omitted).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Moreover, in evaluating subject matter jurisdiction, the court, when necessary, may "'undertake an independent investigation to assure itself of its own subject matter jurisdiction,'" *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)), and consider facts developed in the record beyond the complaint, *id.  See also Herbert*, 974 F.2d at 197 (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"); *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).  The burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

**B.**     **Standing**

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies."  CONST. Art. III, § 2 cl. 1.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (alterations in original).

Absent standing by the plaintiffs, the Court lacks subject matter jurisdiction to hear the claim and

dismissal is mandatory.  *See* FED. R. CIV. P. 12(h)(3).  The Supreme Court has explained, "the

irreducible constitutional minimum of standing contains three elements."  *Lujan*, 504 U.S. at

560.  First, the plaintiff must have suffered an "injury in fact," i.e., "an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted).  "Second, there

must be a causal connection between the injury and the conduct complained of," i.e., the injury

alleged must be "fairly trace[able] to the challenged action of the defendant."  *Id.* (alteration in

original; citation omitted).  Finally, it must be "likely" that the injury will be "redressed by a

favorable decision."  *Id.* at 561.

## III.   DISCUSSION

The plaintiff's claims in both of her pending complaints in this matter against HHS and

DOE fit into three distinct categories: (1) mandamus, encompassing Count I; (2) violation of the

APA, encompassing Count II; and (3) claims based on her interpretation of Section 304 and its

interrelation with Title IX, encompassing Counts III through VIII.  Each category is addressed in

turn, since each category must be evaluated differently.

### A.      Count I: The Plaintiff Is Not Entitled To Mandamus

Mandamus is "a drastic remedy, reserved for extraordinary situations."  *Thomas v.*

*Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014) (internal quotation marks omitted).  To be eligible

for mandamus relief, a plaintiff must prove that she "has a clear right to relief," that "the

defendant has a clear duty to act," and that "there is no other adequate remedy available to the

plaintiff."  *Id.* (quoting *Council of & for the Blind v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir.

1983)).

The plaintiff alleges that DOE and HHS have a duty under applicable regulations to process her complaints "promptly." *See* 366 Pet. ¶ 59; 367 Pet. ¶ 61. The word "prompt" in DOE's and HHS' regulations is undefined. *See* 34 C.F.R. § 100.7(c) (DOE regulation stating DOE "will make a prompt investigation whenever a . . . complaint . . . indicates a possible failure to comply with" Title IX); 45 C.F.R. § 80.7(c) (HHS regulation stating same). Additionally, the regulations at issue require a "prompt investigation," but do not require a prompt "resolution." *See* 34 C.F.R. § 100.7(d) (setting forth procedures for resolving complaints); 45 C.F.R. § 80.7(d) (same). Thus, the plaintiff's claim for mandamus relief fails for two reasons.

First, the plaintiff has submitted letters from DOE and HHS indicating that an "investigation" was commenced within weeks of the agencies receiving the plaintiff's complaints. *See* 366 Pet. App'x Doc. 2 at 41 (stating plaintiff's complaint was being reviewed as of July 19, 2012); 367 Pet. App'x Doc. 2 at 63 (stating plaintiff's complaint was dismissed and allegations were consolidated into larger compliance review). The plaintiff does not appear to claim that the defendants failed to initiate an investigation promptly, but instead that the agencies have not completed their investigations and provided her with a resolution. *See* 366 Pet. ¶ 59; 367 Pet. ¶ 61.

For a court to exercise its mandamus power, the plaintiff must show a "clear right" to the relief she seeks. *See Thomas*, 750 F.3d at 903. While frustrating to the plaintiff, the regulations she cites do not show that she has a clear right to a prompt "resolution" of her claim. *See* 34 C.F.R. § 100.7(d); 45 C.F.R. § 80.7(d). Instead, the plaintiff has a clear right to the prompt "investigation" of her claim, 34 C.F.R. § 100.7(c); 45 C.F.R. § 80.7(c), which she does not dispute occurred here and the evidence supports. Since the plaintiff has shown that the only

action to which she had a clear right has already been taken, i.e., a prompt "investigation," she is not entitled to the mandamus relief she seeks.

Second, if the agencies were required to resolve promptly the plaintiff's complaint, the plaintiff admits that the defendants "are not subject to a specific mandatory timeframe within which such complaints must be resolved." 366 Pet. ¶ 7; 367 Pet. ¶ 7.  Even if the regulations were construed to apply to resolution of complaints, the word "prompt" does not specify a timeframe as it is undefined.  *See* 34 C.F.R. § 100.7(c); 45 C.F.R. § 80.7(c).  Consequently, the plaintiff has no "clear right" to see an investigation completed in a specific timeframe.  Again, although the plaintiff is understandably frustrated at the time the investigation has taken, she does not have a "clear right" such that mandamus relief is warranted.[4]  Since the plaintiff has failed to state a claim for mandamus that can be granted, this claim is dismissed under Federal Rule of Civil Procedure 12(b)(6).

### B.  Count II: The Plaintiff's APA Claim Is Barred

The plaintiff's APA claim is foreclosed by directly applicable D.C. Circuit precedent.  In *Women's Equity Action League v. Cavazos* (*WEAL*), 906 F.2d 742, 750–52 (D.C. Cir. 1990), the plaintiffs' APA action, which sought to "redress the systemic lags and lapses by federal monitors" in investigating complaints under Title IX by bringing suit against the Department of Health, Education, and Welfare ("HEW") (the predecessor agency to HHS and DOE), was rejected.  The D.C. Circuit held that since "[p]laintiffs have implied rights of action against

---

[4] The plaintiff also notes that HHS is charged with enforcing other civil rights laws and the ACA.  366 Pet. ¶¶ 53–54, 56.  She also cites an HHS "case resolution manual" for the proposition that investigations should "obtain[] speedy relief for individual harms."  *Id.* ¶ 57.  She does not contend that any of these laws or manuals include a required timeframe under which an investigation must be completed.  *See id.*  Therefore, the plaintiff is not entitled to mandamus relief under any of the other statutes, let alone manuals, to which she refers.

federally-funded institutions to redress discrimination proscribed by Titles VI and IX," that remedy precludes "a default remedy under the APA." *Id.* at 750–51 (citing 5 U.S.C. § 704).

The plaintiffs in *WEAL* raised nearly identical complaints to the plaintiff in this matter, that HEW failed to enforce civil rights laws by, *inter alia*, failing to "do the job Congress entrusted to them by promptly processing complaints and compliance reviews." *Id.* at 750. The plaintiffs in *WEAL* sued HEW, rather than the allegedly discriminating institutions, to force compliance. *Id.* The *WEAL* Court found that since a private remedy existed for the plaintiffs to bring suit against the allegedly discriminating institutions, a suit under the APA against HEW was foreclosed. *Id.* at 751. Specifically, the Court found that where Congress had authorized "private suits to end discrimination" and found those suits "adequate [and] in fact the proper means for individuals to enforce" civil rights statutes, "an APA suit . . . is far more disruptive of HEW's efforts efficiently to allocate its enforcement resources." *Id.* (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)). Even though suits against individual institutions "may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement," those private suits were "the only court remedy Congress has authorized for private parties," thereby foreclosing APA review. *Id.*

The plaintiff's attempts to distinguish *WEAL* are unavailing. The plaintiff contends that she is seeking to challenge the agency's lack of a prompt response, not UVA's policy. Pl.'s Opp'n HHS Mot. ("Pl.'s HHS Opp'n") at 8, ECF No. 9. Yet, this argument is disingenuous, since the plaintiff's suits essentially seek from the agencies relief from the UVA policies with which she is dissatisfied. *See* 366 Pet. ¶ 2; 367 Pet. ¶ 2 (noting complaints filed with HHS and DOE for which the plaintiff seeks prompt resolution "allege[] that the University of Virginia failed to provide" equitable redress). *WEAL* explicitly considered and rejected this argument,

noting that even if a suit against a private institution was "more arduous, and less effective," it was still the only right of action allowed the plaintiff.  *WEAL*, 906 F.2d at 751.

The plaintiff further asserts, erroneously, that Section 304 "overturned" precedent allowing a private right of action to enforce Title IX because Section 304 "regulates schools' redress of violence against women," and amended portions of the Clery Act, which "forbids private rights of action."  Pl.'s HHS Opp'n at 9.  The plaintiff's conclusion does not follow from her premise.

The Clery Act does prohibit private suits based on failure to comply with the Clery Act.  20 U.S.C. § 1092(f)(14)(A)(i).  As the defendants point out, however, that subsection of the Clery Act was among the eleven subsections not amended by Section 304; indeed, the lack of private right of action subsection has been in effect since 1990.  HHS' Reply Pl.'s Opp'n HHS Mot. ("HHS Reply") at 9, ECF No. 12.  The plaintiff's effort to rely on the Clery Act to sidestep the clear holding of *WEAL* barring APA claims where a private right of action is permitted under Title IX is also barred by another DC Circuit decision.  Fourteen years after the enactment of 20 U.S.C. § 1092(f)(14), the D.C. Circuit reaffirmed that the implied private right of action against institutions under Title IX, first recognized by the Supreme Court in *Cannon*, remained "viable," despite certain unrelated intervening changes in law.  *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 366 F.3d 930, 945–46 (D.C. Cir. 2004).

Under *WEAL*, the plaintiff has an adequate alternative remedy to relief under the APA, i.e., bringing suit against UVA.  *WEAL*, 906 F.2d at 951.  Consequently, any relief under the APA is foreclosed.  *Id.*  This is not to say that the plaintiff lacks *any* right to redress in the federal courts.  Rather, as *WEAL* instructs, Congress determined that the most appropriate defendant for Title IX actions is the institution of higher learning accused of discriminatory practices, not the

government agencies charged with enforcing Title IX.  *See id.*  This Court may not contradict Congress' mechanism for enforcing the law.  Consequently, under *WEAL*, this Court lacks subject matter jurisdiction over the plaintiff's APA claim and it must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

### C.    Counts III–VIII: The Plaintiff's Remaining Claims Are Predicated On An Erroneous Interpretation Of Law

Finally, although the plaintiff's complaints go on at length about the supposed substantive changes wrought by Section 304, including the application of a higher standard of proof for allegations of sexual assault, VAWA's Section 304 is not the culprit for any such substantive change.  Section 304 altered seven subsections of the Clery Act, which generally governs how an institution must report certain data to the government and what types of policies it must disclose publicly.  *See* 20 U.S.C. 1092(f).  The Clery Act does not require or say anything about what standard of proof is to be applied in resolving sexual assault claims, either before the Section 304 amendments or after them.  *See* 20 U.S.C. § 1092(f); 127 Stat. 89–92.

To the contrary, by its very terms, the Clery Act affirmatively does not authorize DOE "to require particular policies, procedures, or practices by institutions of higher education with respect to campus crimes."  20 U.S.C. § 1092(f)(2).  This subsection, which was not amended by Section 304, specifically prohibits the kind of substantive changes the plaintiff alleges occurred after the passage of VAWA.  The DOE, which is charged with enforcing the Clery Act, agrees, stating that VAWA and the Clery Act did not change the responsibilities of higher education institutions to prevent discrimination under Title IX.  79 Fed. Reg. at 35,422.  The plaintiff has also failed to show, in any way, how Section 304 has any effect on Title IV.  Thus, the plaintiff's contention that Section 304 will expose her to "less protective legal standards compared to the standards in effect at the time she filed her complaint," 366 Pet. ¶ 9; 367 Pet. ¶ 9, is predicated

on a demonstrably erroneous understanding of the law.  Consequently, the plaintiff fails to state a claim upon which relief can be granted for Counts III through VIII.

Counts III, IV, and V allege violations of the "Fourteenth Amendment's" equal protection and due process guarantees.  366 Pet. ¶¶ 65–77; 367 Pet. ¶¶ 67–79.  These claims are predicated on the notion that, after VAWA, different standards must be applied to investigations of discrimination based on race or national origin, as opposed to gender.  *See id.*  Since Section 304 did not change any of the standards for evaluating sex discrimination complaints, these counts fail to state a claim upon which relief can be granted, and these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]

Count VI, which alleges a violation of the plaintiff's First Amendment right to free speech and to petition for redress of grievance, fails for similar reasons.  First, the plaintiff has not pleaded that her right to petition for redress of grievances and her right to freedom of speech were affected by VAWA's Section 304.  Second, the plaintiff has no standing to pursue this claim since she has not demonstrated that her actions, or any imminent actions she intends to take, have been affected by VAWA's Section 304 or the actions of the defendants.  Consequently, the plaintiff has failed to allege a concrete and particularized injury in fact that is imminent, *see Lujan*, 504 U.S. at 560, meaning she has failed to allege a case or controversy sufficient to convey Article III standing, and this claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Finally, as previously noted, VAWA's Section 304 did not affect Title IX or Title IV and did not make substantive changes, or, indeed, any changes, to the way in which the government

---

[5] The Fourteenth Amendment applies to State actors, not the Federal government.  U.S. CONST. AMEND. XIV § 1.  The Court construes these claims as arising under the Fifth Amendment's due process guarantees, which applies to the Federal government.  *Id.* AMEND. V.

or institutions of higher learning process claims of sex discrimination.  Since Counts VII and

VIII are predicated on Section 304 creating a "disparate impact" on women, 366 Pet. ¶¶ 85, 90;

367 Pet. 87, 92, these counts must be dismissed for failure to state a claim upon which relief can

be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motions are granted.  Counts II and VI in both

complaints are dismissed because the Court lacks subject matter jurisdiction over them, and

Counts I, III, IV, V, VII, and VIII in both complaints are dismissed for failure to state a claim,

pursuant to Rules 12(b)(1) and (b)(6) respectively.  Accordingly, both of the plaintiff's

complaints are dismissed.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: March 24, 2015

_____
BERYL A. HOWELL
United States District Judge

---

[6] In her oppositions, the plaintiff claims that she is raising a "facial" challenge to Section 304, Pl.'s HHS at 1; Pl.'s Opp'n DOE Mot. at 1, Case No. 367, ECF No. 9.  The record does not support the existence of such a claim, since none of the counts in either complaint refers to a "facial challenge" to Section 304.  In any event, such a claim would fail for the same reasons the plaintiff's other claims fail: Section 304 made no substantive changes to Title IX or Title IV, nor did it cause any disparate impact based on gender.  Thus, even had this claim been properly raised, it would be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.